No. 12,515.

PEOPLE EX REL. COLORADO BAR ASSOCIATION *v.* KELLEY.

(285 Pac. 767)

Decided February 10, 1930.   Rehearing denied March 3, 1930.

Mr. ROBERT E. WINBOURN, Attorney General, Mr. CHARLES ROACH, Deputy, for petitioner.

Mr. JEAN KELLEY, pro se, Mr. J. W. KELLEY, for respondent.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THIS is an original proceeding in this court against one of its officers, for an abuse of his privileges and a violation of his trust as such.

The committee on grievances of the Colorado Bar Association is, by our rules, made an arm of this court for

the purpose of assisting us in exercising that superintending control over the practice of the law necessarily vested here by the very nature of our system of government and confirmed by numerous statutes.

This action was begun by a complaint filed with the court, through its said committee, under rule 84h. A hearing was held thereon upon due notice to Kelley, testimony received, and a report made recommending suspension for a term named, and until on application Kelley should have shown himself fit to resume the practice. Upon consideration of that report the Attorney General was directed to proceed accordingly. To the complaint thereupon filed the defendant answered, admitting the facts and denying only the conclusion that he was thereby shown to have "been guilty of moral turpitude," or to have "willfully violated the canons of ethics of the legal profession." Petitioner moved for judgment. Respondent had filed his brief with the committee and was heard orally by the court.

All the facts are admitted. To detail them at length would be profitless. Those that are material are few and simple. To state them and pronounce judgment is all that is required.

A dispute arose between McCune and Hower concerning the possession of certain personal property. Which was in the right is here immaterial. An orderly and legal remedy existed for the settlement of that question. A reputable lawyer was bound to resort thereto or keep out of the controversy. Kelley, representing McCune, attempted to intimidate Hower, and twice threatened him with criminal prosecution. These tactics failing, he obtained police assurance that he might resort to force without interference. He thereupon associated others with him, returned to the room where the property was located, and, without any vestige of legal authority, broke down the door, took possession, and held it over night. Removal was only prevented by the building manager's refusal of elevator service. Kelley's threats rendered

90

him liable to a fine of $500 and six months' imprisonment. §6821, C. L. 1921. In the employment of force and intimidation he was resorting to the methods of a highwayman, not a lawyer. His admitted reliance upon freedom from police interference has a sinister significance in the light of the known facts. His senior partner (his Uncle) was a member of the city civil service commission, which controls the appointment, promotion and discipline of members of the police force. A lawyer with such an actual or supposed influence, willing to resort to strong-arm methods in representing litigants, is a terrible menace in a community. Hence this respondent must be vigorously dealt with.

As against the extreme penalty we consider respondent's years and his previous good record, and we think the personal attitude, or partnership policy, which produced this misconduct ought not be charged solely to the junior member of the firm.

The judgment of the court, therefore, is that respondent be indefinitely suspended from the practice of his profession.

MR. CHIEF JUSTICE WHITFORD, concurring in part and dissenting in part.

It appears to me, from the record, that the respondent should be disbarred, and his name stricken from the roll of attorneys.

The committee on grievances, composed of nine members of the State Bar Association, in their report to this court made the following statement: "By a separate vote of the committee it was ordered that this report should contain the language, that respondent's testimony, in attempted defence of the charges, was largely perjury."

Aside from the question of technical perjury, which is immaterial here, for the proceedings are not criminal, the respondent's testimony, in the opinion of the committee, was intentionally false. There is no escape from the con-

clusion that he swore falsely before the committee, for the purpose of deceiving its members, and, manifestly, with the intention, ultimately, of deceiving and misguiding this court in its discharge of a judicial duty, and in so doing, respondent also violated his oath of office as an attorney, when upon his admission to the bar he solemnly swore that he would never mislead the court by any artifice, or false statement of fact or law.

Respondent's conduct, disclosed by the record before us, affects his official and moral character as an attorney at law, and shows him to be an unfit person to have his name continued on the roll. A certificate, or license, granted to an attorney at law, is a certificate, by this court to the public, of good moral character, and carries the implication that the person named therein is, in the opinion of the court, worthy of the trust and confidence of any person who may seek his professional aid and advice. The principal purpose of disbarment is not for punishment, but is the exercise of the inherent power of the court, of its discretion to review and redetermine, upon complaint, whether a person theretofore admitted to the profession as an attorney at law is a proper person to have his name continued on the roll.

Disbarment is for the aid and protection of the court in the proper administration of justice. It is also for the protection of the public, clients and litigants, against lawyers, who by their professional misdeeds have shown themselves no longer worthy of the trust and confidence theretofore reposed in them by the court.

Mr. Justice Adams authorizes me to state that he concurs in the views expressed herein.

Mr. Justice Butler, concurring in part and dissenting in part.

After the Attorney General filed his petition, Kelley personally, and without counsel, entered his appearance in this court and filed his answer, in which he stated that

he desired not to join issue; submitted that he has not been guilty of moral turpitude, and that he has not wilfully violated the canons of ethics of the legal profession; called attention to his inexperience and lack of time to reflect and to choose the proper course; and asked the court to exercise leniency. The Attorney General thereupon asked judgment on the pleadings, and the matter was submitted without brief or argument. Though the name of J. W. Kelley appeared as "of counsel" on a "statement" presented to the committee of the bar association while that committee was making its investigation, he entered no appearance in this court, and his name does not appear on the answer.

In considering the charges against Kelley, I will confine the discussion to those appearing in the petition filed by the Attorney General, as they are the only charges that Kelley was required to meet or had an opportunity to answer in this court. In that petition Kelley is not charged with swearing falsely during the investigation conducted by the committee of the bar association. There is no doubt that when he reads the opinions filed herein, he will receive his first information that the committee of the bar association sent a communication to the court voicing the belief of the committee with reference to that matter. His statement that he desired not to join issue must be understood as meaning that he desired not to join issue with the allegations in the petition. He was answering the petition—that, and nothing else.

I am unable to understand the allusion, in the majority opinion, to the "partnership policy." If the record contains anything concerning such policy, it has escaped my notice.

That Kelley should be disciplined, all of the members of the court agree. There are, however, some circumstances that lead me to the conclusion that something less than indefinite suspension from practice would be sufficient. To deprive a lawyer of the right to practice his profession, by which he earns his living, is a step so

drastic that it should be taken only after the most pains-taking consideration of all the facts. A balance must be struck between the rights of the public and the rights of the lawyer, and the remedy applied should protect the rights of both. It should be borne in mind that mere errors of judgment do not justify a disbarment or sus-pension from practice. In *People ex rel. v. Benson,* 24 Colo. 358, 51 Pac. 481, we said: "If an attorney is to be visited with this penalty [i. e., disbarment] whenever he misconceives the facts or the law, or the remedy for the enforcement of rights which he believes belong to a client, few, if any, attorneys would be safe."

Now for the facts. The Hower Advertising Agency Company, of which C. M. Hower is the president, has a suite of offices in the Security Building in Denver. Cath-erine McCune, who is engaged in manufacuring toilet preparations and appliances, made a contract with the Hower Company, whereby the company was employed to manage a campaign of national advertising and a mail order business for the sale of McCune's toilet prepara-tions and appliances. She rented from the Hower com-pany a room which she fitted up with office furniture. In that room were kept her books, records, files, and mailing lists. The contract provided, among other things, that the Hower Company should act as general sales manager for all products to be marketed by McCune, and should attend to all the details relative to conducting the mail order business, such as carrying on the correspondence and keeping the records and accounts. It also provided that all books and records of the said business should at all times be open to inspection by McCune; that they should be the property of McCune, and that she "shall be entitled to the possession thereof at any time that she may deem it advisable." In course of time McCune be-came dissatisfied with Hower's management of her busi-ness, and concluded to move her office elsewhere and em-ploy another manager. On Saturday, January 5, 1929, she and her attorney, Kelley, called upon Hower in his

room in the suite occupied by the Hower company, and Kelley informed Hower that McCune intended henceforth to manage her business to the exclusion of Hower and his company, and demanded that Hower immediately turn over and deliver to McCune all books, records, files, mailing lists, equipment and office furniture then in possession of Hower and relating to the advertising and mail order business of McCune. McCune was indebted to the Hower company for money advanced for her benefit. Hower declined to deliver the property unless offered some assurance that the money would be repaid. Thereupon Kelley threatened to have Hower prosecuted on a charge of larceny as bailee. Hower still refusing to comply with the demand, Kelley went into the waiting room of the suite and returned with Dan McAuliffe, a detective in the Denver police department. Kelley then repeated his demand for the property, and, upon Hower's refusal to comply with the demand, asked McAuliffe to arrest Hower, with which request McAuliffe refused to comply. Thereupon Kelley stated to Hower that he, Kelley, would obtain a warrant for the arrest of Hower upon a charge of larceny as bailee unless he, Hower, complied with the demand. It is alleged, and not denied by Kelley, that immediately thereafter Kelley either went himself or sent a messenger to the Denver police department, and there sought and obtained the assurance of the department that in case the room in which the property was located (which room was locked) was broken into that evening, he, Kelley, and his client, McCune, would not be interfered with by the police department. About 5:30 o'clock p. m. the same day, McCune and Kelley, in company with a private detective, appeared at the Hower suite and threatened to force an entrance into the room in which McCune's property was located, and remove McCune's property. The private detective, acting under Kelley's instructions, and over the objection of Hower's employee, then removed a hinge from one of the doors of the room, but could not remove

the door completely. A locksmith was sent for, and, under Kelley's direction, the locksmith removed the lock and opened the door. McCune and Kelley entered the room and took possession of McCune's property. They could not remove it, however, because the agent of the building would not permit the use of the freight elevator. Acting under Kelley's directions, the private detective remained in the suite of offices until Monday morning, when the Hower company brought suit to enjoin McCune from removing the property, and obtained a temporary restraining order.

That McCune was entitled to the possession of her property is beyond question. Indeed, the district court so held in the injunction suit, upon dissolving the temporary restraining order and denying the application for an injunction. When Kelley was confronted with the inexcusable refusal of McCune's manager to permit McCune to enter her office room and take possession of her property, he threatened, as we have seen, to have Hower arrested for larceny as bailee. Is it so clear that Kelley was mistaken in supposing that Hower, in withholding the property from its owner, who was his (or his company's) employer, was guilty of larceny and was subject to arrest, that the language quoted above from the opinion in the Benson case has no application to this situation? Surely not. Is it so clear that McCune had no right to remove the lock from the door of her own office room in order to remove her own property that her employee was wrongfully withholding from her, that Kelley deserves disbarment or an indefinite suspension from practice for acting upon the supposition that his client had such right? This question also would seem to call for an answer in the negative. But whatever assumption of honest mistake may be entertained concerning these matters, Kelley's admitted attempt to secure non-interference by the police with whatever he and his client might do in obtaining possession of his client's property, is reprehensible, when we consider the relation of the

city's civil service commission to the police department, and the fact that the senior member of the law firm of Kelley and Kelley is a member of that commission. Such conduct deserves something more than a mere reprimand. It seems to me, however, that indefinite suspension is too drastic. For all practical purposes, there is not a great difference between disbarment and indefinite suspension. In the former case the lawyer's name is stricken from the roll, and he is not permitted to practice unless and until, by order of court, his name is restored to the roll; in the latter case the lawyer's name is not stricken from the roll, but he is not permitted to practice unless and until his suspension is terminated by order of court at some indefinite period of time.

Considering all the circumstances, and in view of the previous good record of Kelley, the comparative shortness of his experience at the bar, and his honorable volunteer service in the army, both on the Mexican border and in the late war, it is my opinion that a suspension from practice for six months would not only give adequate protection to the public, but also would satisfy the demands of justice.