AN original proceeding in disbarment.
May 17, 1937, the court made the following order:
"Whereas, by petition in disbarment filed April 8, 1937, the petitioner [attorney general] charged, inter *Page 102 
alia, that `on or about December 4, 1936, respondent [Erl H. Ellis] clandestinely, secretly, without the knowledge or consent of the governor of the state of Colorado, unlawfully installed or caused to be installed, dictographs, microphones and espionage paraphernalia in the private offices of the governor of the state of Colorado. That said espionage equipment was connected by electrical writing with receiving and recording apparatus located in the private apartment of one Jack Gilmore in Denver, Colorado. Your relator [petitioner] is informed and believes and upon such information and belief alleges that said respondent agreed, conspired and confederated with Jack Gilmore, and Walden E. Sweet, and other persons whose names are unknown to your relator [petitioner], wrongfully, unlawfully, secretly and clandestinely to eavesdrop and spy upon private conversations between the citizens of the state of Colorado and governor of the state of Colorado and wrongfully, unlawfully, secretly and clandestinely to eavesdrop and spy upon the official deliberations of the executive department of the state of Colorado; and, in furtherance of said conspiracy and confederation, respondent and his associates did wrongfully, unlawfully, and systematically, eavesdrop and spy upon said conversations and did transmit and record all of the conversations occurring in said offices continuously over a long period of time and until March 21, 1937, without the knowledge or consent of the incumbent governor or his predecessor;' and,
"Whereas, by his answer filed April 19, 1937, respondent admitted, that, `during the months of November and December, 1936, and January, February and March, 1937, this respondent planned with Jack Gilmore and Walden E. Sweet and directed and caused the installation of microphones in the office of the governor of the state of Colorado in the state capitol building and the connection of the said microphones by electrical wiring to receiving and recording apparatus located in an apartment occupied by Jack Gilmore and that a large number of *Page 103 
conversations occurring in the said offices were heard and some recorded, all without the knowledge of any governor of the state of Colorado;' and,
"Whereas, considering only the admitted facts, the court wishes to be advised whether respondent has subjected himself to disciplinary orders.
"Therefore, it is ordered, that Monday, June 21, 1937, at two o'clock, it will hear the parties and interested counsel orally for one and one-half hours, and if other members of the bar shall notify the clerk that they wish to appear as friends of the court and speak to the question, they may be heard."
At the appointed time, the attorney general and deputy attorney general, appearing for petitioner, and respondent in his own behalf, presented their views.
As the issue was limited by the quoted order and in argument, so we have limited the scope of our consideration. We are disposed to the view that planned and studied espionage of the people's executive, as here, and regardless of the identity or calling of those engaging therein, is shocking to all fine sensibilities, violative of the American conception of the decencies, and potentially inimical to free government. For the people's court to regard it otherwise would be unthinkable. That the eavesdropping of which complaint is made was by a member of the bar, in manner and by means admitted by respondent, emphasizes the evil involved. By his confessed acts — and we consider nothing else — respondent has gravely offended, and for the tribunal charged with disciplinary responsibility to give it countenance would be gross dereliction.
Because, however, it is also charged that respondent is guilty of crime, a matter cognizable by authorities elsewhere, and out of which, should they proceed, questions may arise requiring review at our hands, we think it conformable to the demands of justice not to enter a final disciplinary order now, but reasonably await developments, if any, and from whatever proper source, *Page 104 
which may tend to aggravate or mitigate respondent's conduct. To that end, and until further order, let respondent be suspended from the bar, and the proceeding continue on the active docket.
MR. JUSTICE BOUCK, MR. JUSTICE BAKKE and MR. JUSTICE KNOUS concur.
The views of Mr. Justice Young and Mr. Justice Holland appear from their accompanying opinions.
MR. CHIEF JUSTICE BURKE dissents.