No. 14,140.

PEOPLE EX REL. ATTORNEY GENERAL *v.* ELLIS.
(86 P. [2d] 247)

Decided December 27, 1938.

Mr. BYRON G. ROGERS, Attorney General, Mr. LUKE J. KAVANAUGH, Deputy, Mr. PIERPONT FULLER, JR., Assistant, for petitioner.

Mr. Max D. Melville, Mr. Fred M. Winner, for respondent.

Mr. Erl H. Ellis, pro se.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

In the matter of the *People ex rel. v. Ellis,* original opinion in which is reported in 101 Colo. 101, 70 P. (2d) 346, we suspended respondent from the bar until further order.

Respondent has petitioned for a final order, his petition being accompanied by the record of a trial had subsequent to our order, on an indictment for a misdemeanor —eavesdropping—returned in the Denver district court, against him and Gilmore and Sweet, growing out of the matter discussed in our order of suspension. They were found guilty by a jury and so adjudged by the court.

We have examined the record submitted by respondent, and on our own motion have procured and read a transcript of the testimony given by respondent and his codefendants at the district court trial. Respondent does not challenge the verdict of the jury, nor the court's judgment thereon. We cannot think the jury wrongly appraised the evidence, or that the court adjudged other than temperately.

As in his answer filed here on the original hearing, so in his testimony in the district court, respondent assumed full responsibility for all that transpired in the matter. He supplied the funds—thousands of dollars—required to purchase and install the expensive and intricate sound producing and recording machines which enabled him to conduct the eavesdropping eventuating in his discomfiture in the district court. He paid compensation to those who aided him—particularly those indicted and convicted with him in the district court prosecution. Ex-

pert stenographers, assigned by respondent to record what came through the microphones to which reference is made in our earlier opinion, supra, were compensated by respondent. He supplied the funds given to one of the state house janitors as an inducement to that public servant to betray his trust and further the efforts of respondent and his confederates, to gain entrance to the state house and the various offices therein. As a detail in that regard, four "master" or "pass" keys were obtained, any one of which would enable the possessor to enter any of the offices in the building: the governor's chambers, the chambers of the chief justice and those of his associates, the suites of the several executive officers, the rooms of the civil service commission, and the quarters of the various boards, bureaus and other public activities housed in the capitol. The foregoing, and much more of like import, appears from the testimony given by respondent and those for whose acts he admits responsibility.

We do not descant at length on the moral turpitude inherent in the conduct of respondent. We are content to observe that in our view no honorable citizen would wish, or consent to have unauthorized possession of a key to the rooms of public officials, and that the action of a member of the bar promoting the procuring of such possession in the circumstances here disclosed is doubly shocking. As to what should be our further order, the gravity of respondent's offending considered, gives us pause. In *People ex rel. v. Kelley*, 87 Colo. 88, 285 Pac. 767, a disciplinary proceeding, the gravamen of the charge consisting in gaining unlawful entrance into a room where property allegedly belonging to a client of the attorney there involved was being kept, we ordered indefinite suspension, which continued from February 10, 1930, to October 22, 1931, when the offending attorney was restored to the practice. The two proceedings are similar in that in each instance a member of the bar, the one personally, the other through his co-conspirators, made an

unlawful entry into the rooms of others. We are disposed to regard the Kelley proceeding as a guide for the measure of punishment here. By restoring respondent now to the bar we will have been somewhat less severe as to length of time of suspension than we were in the other like proceeding. Therefore, effective on announcement, respondent is reinstated in the bar.

MR. CHIEF JUSTICE BURKE specially concurring.

MR. JUSTICE BOUCK and MR. JUSTICE HOLLAND concur in the conclusion.

MR. CHIEF JUSTICE BURKE concurring specially.

I concur only in the order of restoration. I think the opinion distorts the record. That record clears respondent of all personal interest and evil intent, and justifies the conclusion that the price extorted for his activities is cheap for the renovation they wrought. I refrain from further comment, believing that the sooner the entire matter is relegated to the musty past the better for the reputation of the government of our state.